IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VICTOR LANCE, ) | Civil Action No. 3:11-802-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff, Victor Lance, filed this action on April 4, 2011. By Order of Reference (Doc. 7) from the Honorable Cameron McGowan Currie, United States District Judge, pursuant to 28 U.S.C. § 636, Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, and the consent of the parties, the case is before the undersigned Magistrate Judge for a final order. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

In a decision dated January 28, 1999, the claimant was awarded benefits effective June 1, 1996. As part of a continuing disability review, it was determined that Plaintiff was no longer disabled as of August 1, 2004. Plaintiff challenged the decision that he was no longer disabled, which was upheld upon reconsideration after a disability hearing by a state agency disability hearing officer. Plaintiff requested and received a hearing before an ALJ, who issued a decision of denial on January 26, 2007.



Thereafter, on June 2, 2009, Plaintiff filed the current application for DIB alleging disability as of July 1, 1992.[1] Plaintiff's claim was denied initially, and upon reconsideration. A hearing before an Administrative Law Judge ("ALJ") was held on May 26, 2010, at which Plaintiff (represented by counsel) appeared and testified. On June 25, 2010, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of the vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-nine years old at the time of the ALJ's decision. He has a high school education with one year of college and has past relevant work as a machine operator. Tr. 178, 182. Plaintiff alleges disability due to lumbar and cervical degenerative disc disease, osteoarthritis of the right knee, and Type II diabetes mellitus.

The ALJ found (Tr. 18-25):

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2008.

2. The claimant did not engage in substantial gainful activity during the period from January 27, 2007 through his date last insured of September 30, 2008 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: lumbar and cervical degenerative disc disease, osteoarthritis of the right knee, and Type II diabetes mellitus (20 CFR 404.l520(c)).

---

[1]The ALJ determined that the period at issue in the current application for benefits is from January 27, 2007 through September 30, 2008 (Plaintiff's last date insured). The ALJ in the present case specifically noted that the theory of res judicata applies to the time period of July 1, 1992 (Plaintiff's alleged onset date) to January 26, 2007 (the date of the ALJ's prior decision), due to the fact that the same parties, material facts, and issues were involved in the prior final decision. Tr. 16. Plaintiff has not disputed this finding.

2



4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work[2] as defined in 20 CFR 404.1567(a) except no overhead reaching, occasional postural activities, a sit/stand option, and avoiding workplace hazards.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 16, 1990 and was 47 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 27, 2007, the alleged onset date, through September 30, 2008, the date last insured (20 CFR 404.1520(g)).

On February 4, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Tr. 1-5.

---

[2]Sedentary exertional work is described by the Commissioner of the Social Security Administration as requiring lifting and carrying no more than 10 pounds at a time, sitting for six hours in an eight-hour workday, and standing and walking for two hours in an eight-hour workday.



## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL RECORD

Prior to the relevant time period, Plaintiff was treated at the Carolina Spine Institute from October 18, 1994 through August 8, 1996, for complaints of muscular-type pain following back surgery. Tr. 266-271. Notes from St. James-Santee Family Health Center ("SJSFHC") indicate that Plaintiff was treated there from January 1997 to January 2007 for hypertension, back pain, neck pain, hyperlipidemia, carpel tunnel syndrome, and headaches. Tr. 280-309. On December 10, 1997, Plaintiff was treated at SJSFHC for swelling in his neck, hands, and ankles, as well as complaints of tightness in his fingers and ankles. Tr. 308. On September 13, 2004, it was noted that Plaintiff was depressed and continued to suffer with pain and swelling to the back of his neck and pain in his right and left shoulders, arms, and lower back. Tr. 287. Plaintiff was diagnosed with Type-II diabetes in May 2006. Tr. 284.



During the relevant time period, Plaintiff continued treatment at SJSFHC from January 2007 to September 2008. He was treated for various impairments including hypertension, diabetes, neck pain, back pain, right knee pain, and hyperlipidemia. Tr. 278-279, 322-326, 407-414.

Plaintiff was examined by Dr. Leonard Forrest of Southeastern Spine Institute in June 2007. Plaintiff reported a history of back and neck problems since the early 1990s and two prior back surgeries. His medications for pain at the time were Flexeril and Relafen. Dr. Forrest's examination revealed tenderness over Plaintiff's neck, upper back, and lower back, but did not reveal any definite weakness or definite neurological deficits in Plaintiff's arms or legs. X-rays of Plaintiff's cervical and lumbar spine revealed degenerative changes with disc narrowing at several levels of the cervical spine, and mild spondylosis changes. Dr. Forrest recommended new lumbar and cervical MRIs as well as EMG and nerve conduction studies. He thought that "in terms of extremity symptoms, it is going to be somewhat confusing no matter what we find on the scans because [Plaintiff] also has diabetes and, therefore...an additional factor of peripheral polyneuropathy is very reasonable." Tr. 312-314.

In conjunction with Dr. Forrest's June 2007 examination, Plaintiff reported on a chart that his pain was very close to the top of the chart indicating that his pain was almost as bad as it could be on that date. Tr. 470. Plaintiff completed a questionnaire in which he checked that due to back pain on that day, he could not bend over a sink for ten minutes, move a table, push or pull heavy doors, carry two bags of groceries, or lift forty pounds; he found it somewhat difficult to get out of bed; he found it minimally difficult to sleep for at least eight hours, turn over in bed, travel one hour in a car, walk a few blocks, walk several miles, throw a ball, take food out of the refrigerator, make



his bed, and put on socks; and he did not find it difficult at all to stand for four hours, climb one flight of stairs, reach up to high shelves, and run two blocks. Tr. 469-470.

Subsequent EMG and nerve conduction studies in July 2007 showed no evidence for radiculopathy or definite peripheral polyneuropathy, although there was early ulnar neuropathy on the left. Tr. 310, 445-450. On June 26, 2007, an MRI of Plaintiff's neck revealed abnormalities at the C4-5 and C5-6 levels of Plaintiff's cervical spine. At C4-5 there was a diffuse osteophyte resulting in moderate to severe right and moderate left exit foraminal stenosis and at C5-6 there was a central protrusion of disc material accompanied by osteophytes with moderate foraminal stenosis, and moderate spinal cord compression with probable myelopathic signal changes. Dr. Forrest thought that Plaintiff's left upper extremity symptoms were predominantly coming from his neck and most likely from C5-6. Tr. 310, 318-319. An MRI of Plaintiff's lumbar spine the same day showed Plaintiff's previous interbody fusions at L4-5 and L5-S1 with granulation tissue, but no evidence of recurrent herniation and no sign of active nerve root compression. Dr. Forrest noted that Plaintiff's surgical fusion looked good on the MRI and found that there was no evidence for new or chronic radiculopathy. With regard to Plaintiff's low back and leg symptoms, Dr. Forrest opined that it was likely related to granulation tissue and nerve irritation in Plaintiff's lower lumbar spine. Tr. 310, 316-317. Dr. Forrest recommended that Plaintiff receive an epidural steroid injection for his neck problems (which Plaintiff underwent in July 2007, September 2007, and February 2008 - Tr. 459-461). Tr. 310.

In August 2007, Plaintiff reported to Dr. Forrest that his symptoms improved following his July 2007 epidural steroid injection, but his back and neck problems were returning. Plaintiff also reported right knee problems. Dr. Forrest recommended a second epidural steroid injection and



referred Plaintiff to another doctor for evaluation of his knees. Tr. 353. On September 17, 2007, x-rays of Plaintiff's knees revealed no abnormalities. Tr. 327.

In October 2007, Plaintiff told Dr. Forrest that he still had significant neck and upper back symptoms following a second epidural steroid injection, but his lower back symptoms were "minor." Dr. Forrest opined that physical therapy might be more effective than another injection, and he prescribed physical therapy two times a week. Tr. 352, 361.

On September 20, 2007, Audrey Hunter, a state agency consultant, opined that Plaintiff had no severe mental impairments. Tr. 330-342. On September 25, 2007, Dr. Jean Smolka, a state agency physician, completed a physical residual functional capacity ("RFC") assessment. Dr. Smolka opined that Plaintiff was limited to occasionally lifting and/or carrying up to twenty pounds; frequently lifting and/or carrying up to ten pounds; standing and/or walking about six hours in an eight hour workday; sitting about six hours in an eight-hour workday; could only occasionally climb ramps and stairs, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; and was limited to frequent (not continuous) overhead reaching (because of neck pain). Tr. 344-351.

Although Dr. Forrest authorized twenty physical therapy sessions, Plaintiff only attended three sessions in late October and early November 2007. Tr. 362. During his last appointment, Plaintiff was described as belligerent by the physical therapist. Plaintiff complained that his prior session resulted in swelling, but the physical therapist was unable to corroborate this as she did not observe any swelling in the indicated areas. Tr. 366. On November 15, 2007, Plaintiff was discharged from physical therapy for lack of attendance or compliance. Tr. 365. Plaintiff later told Dr. Forrest that his symptoms were worse as a result of physical therapy. In light of Plaintiff's report, Dr. Forrest decided to try another epidural steroid injection in February 2008. Tr. 383.



In March 2008, Plaintiff reported to a nurse practitioner at SJSFHC that he had pain and a crackling sound in his knee. Tr. 404. Plaintiff reported that he walked two miles for exercise three days a week in March and June 2008, and he reported he walked regularly in September 2008. Tr. 407-408, 414.

In April 2008, Plaintiff was examined by Dr. Wright Skinner, III, of Bay Orthopaedic Associates. Dr. Skinner noted that Plaintiff had some effusion and tenderness in his knee, but no gross instability. X-rays revealed a moderate amount of osteoarthritis and a possible meniscal tear. Dr. Skinner recommended arthroscopic surgery. Tr. 403. A care provider at SJSFHC subsequently noted that Plaintiff would follow up with Dr. Skinner if his pain increased. Tr. 407.

Plaintiff was next treated by Dr. Forrest on February 2, 2010 (approximately two years after his last examination by Dr. Forrest in February 2008 and more than a year after his date last insured). Plaintiff reported in February 2008 that his pain was eight to nine out of ten. Tr. 433-434, 436-437. He reported "gradually worsening symptoms involving his neck and upper extremities and also his low back and lower extremities...then about a month ago he fell in the shower." Plaintiff stated that since the fall his symptoms were much worse, he had pain in his neck and both arms, and also had pain in his low back and buttocks with some tingling in his legs. Dr. Forrest noted that Plaintiff's blood sugar had been out of control which he thought was a "potentially complicating factor for the lower extremities." Dr. Forrest noted that Plaintiff's muscle strength was at least four plus out of five. Dr. Forrest opined that Plaintiff's most recent scan findings from June 2007 indicated that both the lumbar and cervical studies showed some abnormalities of significance. Tr. 435.

On February 11, 2010, Dr. Forrest reviewed Plaintiff's latest cervical and lumbar MRIs (completed the same day - Tr. 451-454). He noted that the lumbar MRI indicated mild disc bulging

8



at L3-4, L4-5, and L4-S1; the presence of fusion changes and some granulation tissue; and no evidence of nerve compression. Dr. Forrest noted that Plaintiff's cervical MRI showed:

> multilevel abnormalities that are primarily degenerative with disc/osteophyte complexes present at C4-5 and C5-6 ....[with questionable] early myelopathic signal change....The combination of the degenerative abnormalities at C4-5 and C5-6 is producing a central stenosis as well as forminal stenosis which is worse on the right side at C4-5 and worse on the left at C5-6.
>
> *****
>
> It is going to be best if we are able to treat Mr. Lance non-operatively given the multilevel nature of his findings. Fortunately, he does not have definite neurologic deficit. The only deficits that I find clinically are decreased sensation distally and that is in the feet and the hands bilaterally. This is almost certainly related to his diabetes.

Tr. 432; see Tr. 451-454. Dr. Forrest instructed Plaintiff to check with his primary care doctor with regard to whether or not he was a candidate for cervical epidural injection due to his history of increased blood sugars. Tr. 432.

After the ALJ's decision, Plaintiff submitted an Attending Physician's Statement of Disability form for Primerica Life Insurance Company dated September 23, 2010. It was noted on the form that Dr. Forrest last examined Plaintiff on February 11, 2010. Tr. 478. Dr. Forrest opined that Plaintiff was "permanently disabled & unable to work." Tr. 480. He listed Plaintiff's diagnoses and symptoms as: lumbar and cervical pain with the objective findings of cervical MRI showing nerve root compression at C4/5 and C5/6 and lumbar MRI showing compression at the L3/L4 level. Tr. 478. Dr. Forrest estimated that Plaintiff's disability began in 1992 and noted that Plaintiff began receiving treatment for his condition with Dr. Poletti in the "early 90's due to back injury." Tr. 478. Dr. Forrest opined that Plaintiff was permanently disabled from any type of work and would never recover from his condition. Tr. 480.



## HEARING TESTIMONY/REPORTS OF CONTACT

In an August 2007 Report of Contact, Plaintiff stated that he was able to handle his own self-care needs and that he was able to cook, drive, shop, visit family members, and attend church. He acknowledged that his medication helped his pain. Plaintiff reported that he could only stand for thirty minutes at a time. Tr. 184. In a September 2007 Report of Contact, Plaintiff stated that he participated in church-related activities (Sunday School and Bible classes), worked crosswords and puzzles, and ran errands. Tr. 185.

At the hearing before the ALJ, Plaintiff testified that he worked as a machine operator prior to 1992, and as a material handler. He said he was put on light duty for a short time after back surgery. Tr. 35-36, 40. Plaintiff testified about problems with his lower back, bad discs in his neck, spasms in his lower back and neck, problems with his knees, and carpal tunnel syndrome in his wrists. Tr. 37, 42, 44. Plaintiff stated that he had high blood pressure, and was diagnosed with diabetes three years prior to the hearing. Tr. 42. He said that it was difficult for him to stoop or bend, lift or carry things, bend his knee, or stand in one position. Plaintiff testified that symptoms in his neck made it difficult for him to look around quickly, which affected his ability to drive. Tr. 45-46. He stated that he had TMJ syndrome which caused him headaches and pain. Tr. 46-47. Plaintiff said his carpal tunnel syndrome made it difficult for him to pick up things and hold them. Tr. 47-48. He reported that he had to lie down approximately three to four times a day for about fifteen minutes each time to relieve pain (which he described as a ten out of ten). Tr. 48. He stated that he was unable to lift his arms above his shoulders and could not use his hands for repetitive movements. Tr. 49. Plaintiff estimated that he could only stand for fifteen minutes without feeling uncomfortable and said he had trouble walking because he would fall and lose his balance. Tr. 49.



Plaintiff stated that the medication he takes for high blood pressure is also taken for his depression and anxiety. Tr. 51. Plaintiff testified that he was able to cook, wash, windows, take out the garbage, and wash clothes "some," but is not able to mop, mow the yard, vacuum, dust, rake leaves, or garden. Tr. 53-54. Plaintiff said he was able to lift and carry a gallon of milk and a bag of sugar for short distances. He reported that had trouble with concentration sometimes due to his medication, but watched television sometimes and attended church regularly. Tr. 54-55.

## **DISCUSSION**

Plaintiff alleges that: (1) the Appeals Council erred in failing to remand this case to consider the retrospective opinion of Dr. Forrest, his treating pain management specialist; (2) the ALJ erred by improperly evaluating his credibility; and (3) the VE testimony, which did not consider all of the limitations supported by the record (particularly given the new evidence submitted to the Appeals Council), does not provide substantial evidence to support the ALJ's finding that there is other work in the national economy that he can perform. The Commissioner contends that the final decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence[3] and free from reversible legal error.

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).



Plaintiff contends that the Appeals Council erred in failing to remand this action to consider the retrospective opinion of Dr. Forrest, his treating pain management specialist. The Commissioner contends that the Appeals Council was not required to articulate reasons for declining Plaintiff's request for review of the ALJ's decision, substantial evidence in the record as a whole (including the evidence presented to the Appeals Council) supports the ALJ's decision, and Dr. Forrest's September 2010 opinion does not show that the ALJ's finding that Plaintiff was not disabled between January 27, 2007 and September 30, 2008 is contrary to the weight of the evidence.

When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the ALJ's decision is supported by substantial evidence. Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011); see Wilkins v. Secretary Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir.1991)(en banc). In Meyer, the Fourth Circuit held that it is not necessary for the Appeals Council to state reasons for its decision not to review the ALJ decision. When the Appeals Council receives additional evidence and denies review, the issue for the reviewing court becomes whether the ALJ's decision is supported by substantial evidence or whether a remand is necessary for the ALJ to consider the new evidence. In Meyer, the plaintiff's treating physicians had a policy not to provide opinion evidence for Social Security proceedings. Therefore, the ALJ was not provided with any opinions by treating physicians. After the issuance of the ALJ's decision, the claimant was able to obtain an opinion letter from his treating physician, and the Appeals Council made the letter a part of the record but found that it did not provide a basis for changing the ALJ's decision. The Fourth Circuit remanded the case for further fact-finding because



"no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707.

This action needs to be remanded to the Commissioner to consider the new evidence submitted to the Appeals Council in light of all of the evidence. The Appeals Council in this case stated, without explanation, that it "found that this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. 2. Here, similar to the situation in Meyer, Plaintiff's treating physicians did not give any opinions as to his limitations or as to disability prior to the ALJ's decision. The ALJ specifically stated in his opinion that the record did not contain any information from any treating source as to Plaintiff's RFC. Tr. 22.

The evidence submitted to the Appeals Council is from Plaintiff's treating pain specialist.[4] Although it is arguably a conclusory opinion, it is based on objective evidence in the record and may provide further information concerning Plaintiff's cervical and lumbar spinal impairments and Dr. Forrest's interpretation of Plaintiff's 2007 MRIs. Dr. Forrest stated that the objective findings

---

[4] The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.



included MRI evidence of nerve root compression at the C4/5 and C5/6 level. The Commissioner argues that this is based on Plaintiff's February 2010 MRI which is not applicable to the relevant time period. The opinion, however, does not identify which MRI(s) are relied upon. Although the February 2010 cervical MRIs may show a worsening of Plaintiff's condition, the June 2007 cervical MRI indicated "diffuse osteophyte production resulting in moderate to severe right and moderate left exit foraminal stenosis" at C4-5 and "a central protrusion of disc material....accompanied by osteophytes.....[with] moderate foraminal stenosis....[with] **moderate spinal cord compression** with probable myelopathic signal change." Tr. 318 (emphasis added). It is unclear whether the ALJ's opinion is supported by substantial evidence in light of the evidence submitted to the Appeals Council.

Additionally the evidence presented to the Appeals Council may have an impact on the ALJ's credibility determination, as the ALJ discounted Plaintiff's credibility in part because no limitations were placed on him by his treating physicians to substantiate his subjective complaints. Tr. 23. The evidence presented to the Appeals Council may also be pertinent to the hypothetical posed to the VE.[5]

In light of this new evidence, it is possible that there are further limitations on Plaintiff's ability to manipulate. Thus, upon remand, the Commissioner should consider Plaintiff's allegations of error concerning the ALJ's credibility determination and the hypothetical to the VE.

---

[5]In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).



# CONCLUSION

The Commissioner's decision is not supported by substantial evidence and correct under controlling law. This action is remanded to the Commissioner to consider the evidence submitted to the Appeals Council and to consider Plaintiff's remaining allegations of error.

It is, therefore, **ORDERED** that the Commissioner's decision is **reversed** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case is **remanded** to the Commissioner for further administrative action as set out above.

_____
Joseph R. McCrorey
United States Magistrate Judge

August 28, 2012
Columbia, South Carolina